1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT
9                      EASTERN DISTRICT OF CALIFORNIA
10

11  ANGEL SALINAS,                          Case No. 1:20-cv-01095-CDB  (SS)

12              Plaintiff,                   **ORDER AFFIRMING THE**
                                            **COMMISSIONER**
13       v.
                                            (Doc. 15)
14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                Defendant.
16

17

18        Plaintiff Angel Salinas filed an application for supplemental social security income on

19  May 24, 2017.  (Doc. 11, Administrative Record "AR" 163-173).  The Commissioner denied the

20  claim by initial determination on September 7, 2017.  (AR 85-89).  Plaintiff requested

21  reconsideration of the initial determination on November 2, 2017.  (AR 91).  The Commissioner

22  denied reconsideration on January 11, 2018.  (AR 95).  Plaintiff then requested a de novo hearing

23  before and Administrative Law Judge (ALJ) on March 8, 2018.  (AR 105).  The ALJ conducted

24  an oral hearing on October 18, 2019.  (AR 28-57).  Thereafter, the ALJ published an unfavorable

25  decision on November 1, 2019.  (AR 12-27).

26        Plaintiff requested that the Appeals Council review the decision issued by the ALJ on

27  November 8, 2019. (AR 158).  The Appeals Council denied the request for review on June 9,

28  2020.  (AR 1). On August 6, 2020, Plaintiff filed the instant action for review of the final decision

1     of the Commissioner of Social Security.  (Doc. 1).

2     Plaintiff filed a Motion for Summary Judgment on July 7, 2021 (Doc. 15.).  The

3     Commissioner filed an opposition on August 5, 2021 (Doc. 16), and on August 19, 2021, Plaintiff

4     replied. (Doc. 17). The parties have consented to the jurisdiction of a U.S. magistrate judge.

5     (Doc. 10).  After reviewing the record, the Court affirms the ALJ's decision.

6     **SUMMARY OF THE ALJ'S DECISION**[1]

7     At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

8     since May 24, 2017.  20 C.F.R. § 416.971 *et seq.*  (AR 17). At step two, the ALJ found that

9     Plaintiff had obesity and lower extremity edema, which he found to be severe medically

10    determinable impairments (MDI).  The ALJ also found that Plaintiff's hypertension constituted an

11    MDI but was non-severe since it had minimal impact on Plaintiff's ability to work. The ALJ also

12    acknowledged Plaintiff's blood pressure condition was controlled with medication and there was

13    no evidence of organ damage.  (*Id.*)

14    At step three, the ALJ found that Plaintiff did not have an impairment or combination of

15    impairments that meets or medically equals the severity of one of the listed impairments under 20

16    C.F.R. Pt. 404, Subpt. P, App'x 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).  (AR 17).  The

17    ALJ also formulated Plaintiffs Residual Functional Capacity (RFC) as follows:

18
19
20
21          After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry no more than 10 pounds, stand and walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday.  He should avoid climbing ladders, ropes, or scaffolds.  The claimant is capable of occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs.  He is able to frequently balance.

22    (AR 17-18). The ALJ acknowledged that Plaintiff testified about his inability to put on shoes.

23    During the hearing, Plaintiff mentioned that he needed to raise his legs in order to reduce the

24    edema.  Plaintiff further testified that he has trouble breathing if he walks too much.  He reported

25    that he had been using a cane since August [2019], and it was prescribed by his doctor.  (AR 20,

26

27        [1] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized below.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

28

44). Plaintiff also testified that he could lift about five pounds, sit for 30-40 minutes at a time, and stand for 15-20 minutes.  (AR 20).  The ALJ found that Plaintiff is limited to a sedentary RFC in order to address his shortness of breath, morbid obesity and edema. (*Id.*)

The ALJ found that Plaintiff's MDIs could reasonably be expected to cause his alleged symptoms, however, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (AR 21).

The ALJ disputed Plaintiff's testimony about his need for a cane because Plaintiff inconsistently stated some time earlier that he did not need a cane.  (AR 21, 408).[2]  The ALJ similarly discounted Plaintiff's testimony regarding his purported need for/use of supplemental oxygen because, while he previously reported being advised to use oxygen at night, the record contained no evidence that he ever was prescribed oxygen by Dr. Peters or any other doctor. (AR 18, 21). Moreover, the ALJ noted the objective medical opinions of the State agency as well as the objective clinical findings documented by Dr. Jacob K. Peters M.D. established that Plaintiff's oxygen levels were normal much of the time. (AR 18, 19, 21); *see e.g.* (AR 424, 426, 427, 430, 435, 436, 445).

At step four, the ALJ found that Plaintiff had no past relevant work (PRW), but he could perform a significant number of other jobs.  (AR 21-22).  Cheryl R. Chandler, a Vocational Expert ("VE") testified at the hearing.  (AR 49).  The ALJ relied on the VE's testimony and found that Plaintiff could work as an election clerk, document preparer or nut sorter.  (AR 22). The ALJ found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. The ALJ found that Plaintiff was not disabled. (AR 23).

/ / /

---

[2] The ALJ also noted that Plaintiff's medical records did not reflect Plaintiff having been prescribed a cane, but as the Commissioner concedes (Doc. 16 p. 22), the ALJ was mistaken as Plaintiff was prescribed a cane on or about August 21, 2019 (AR 266) – approximately two months prior to Plaintiff's testimony.

1

**STANDARD OF LAW**

2    A district court's review of a final decision of the Commissioner of Social Security is

3    governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the

4    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

5    is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

6    evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

7    conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

8    equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

9    citation omitted). In determining whether the standard has been satisfied, a reviewing court must

10   consider the entire record as a whole rather than searching for supporting evidence in isolation.

11   *Id.*

12   In reviewing a denial of benefits, a district court may not substitute its judgment for that of

13   the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible

14   to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

15   2008). Further, a district court will not reverse an ALJ's decision on account of an error that is

16   harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate

17   nondisability determinations." *Id*. (quotation and citation omitted). The party appealing the

18   ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

19   *Sanders*, 556 U.S. 396, 409-10 (2009).

20

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

21   A claimant must satisfy two conditions to be considered "disabled" within the meaning of

22   the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful

23   activity by reason of any medically determinable physical or mental impairment which can be

24   expected to result in death or which has lasted or can be expected to last for a continuous period

25   of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment

26   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

27   considering his age, education, and work experience, engage in any other kind of substantial

28   gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

1    The Commissioner has established a five-step sequential analysis to determine whether a

2    claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

3    Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

4    claimant is engaged in "substantial gainful activity," the Commissioner must find that the

5    claimant is not disabled.  20 C.F.R. § 416.920(b).

6    If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

7    two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

8    C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

9    impairments which significantly limits [his or her] physical or mental ability to do basic work

10    activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

11    impairment does not satisfy this severity threshold, however, the Commissioner must find that the

12    claimant is not disabled.  20 C.F.R. § 416.920(c).

13    At step three, the Commissioner compares the claimant's impairment to severe

14    impairments recognized by the Commissioner to be so severe as to preclude a person from

15    engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

16    severe or more severe than one of the enumerated impairments, the Commissioner must find the

17    claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

18    If the severity of the claimant's impairment does not meet or exceed the severity of the

19    enumerated impairments, the Commissioner must pause to assess the claimant's "residual

20    functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

21    ability to perform physical and mental work activities on a sustained basis despite his or her

22    limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

23    At step four, the Commissioner considers whether, in view of the claimant's RFC, the

24    claimant is capable of performing work that he or she has performed in the past (past relevant

25    work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

26    work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

27    the claimant is incapable of performing such work, the analysis proceeds to step five.

28    At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is

1    capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In

2    making this determination, the Commissioner must also consider vocational factors such as the

3    claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the

4    claimant is capable of adjusting to other work, the Commissioner must find that the claimant is

5    not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work,

6    analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.

7    20 C.F.R. § 416.920(g)(1).

8          The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

9    180 F.3d 1094, 1098 (9th  Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

10   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

11   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

12   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13                                    **ANALYSIS**

14         Plaintiff advances four arguments for the Court's review: (1) Whether the ALJ's rejection

15   of Dr. Peters' opinion was supported by substantial evidence; (2) whether the ALJ failed to state

16   clear and convincing reasons for rejecting Plaintiff's testimony; (3) whether the ALJ failed to

17   state a complete hypothetical question to the Vocational Expert; and (4) whether the Court should

18   remand since the Commissioner awarded Plaintiff benefits following a subsequent claim after the

19   Appeal Council's denial of review of the instant claim.

20         **A.  Whether the ALJ's Rejection of Dr. Peters' Opinion was Supported by**

21              **Substantial Evidence**.

22         Since Plaintiff applied for SSI after March 27, 2017, the ALJ's decision was governed by

23   the revised regulations promulgated by the Revisions to Rules Regarding the Evaluation of

24   Medical Evidence, 82 Fed. Reg. at 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416).

25   *See, e.g., Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6,

26   2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply

27   to the ALJ's evaluation of medical opinion evidence.").  The Revisions eliminated the hierarchy

28   of medical opinions and instead provide that the Commissioner does not defer to any medical

1   opinions, even those from treating sources.  20 C.F.R. § 416.920c(a) (2017). Instead, under the

2   Revisions, "'[t]he most important factors' that the agency considers when evaluating the

3   persuasiveness of medical opinions are 'supportability' and 'consistency.'"  *Woods v. Kijakazi*, 32

4   F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)).  Supportability means the

5   extent that a medical source supports the medical opinion by explaining the relevant medical

6   evidence. *Id*.; § 404.1520c(c)(1). Consistency is the extent to which a medical opinion is

7   consistent with the evidence from other medical as well as nonmedical sources in the claim. *Id*.;

8   404.1520c(c).

9         Under the revised regulations, the medical source's relationship with the claimant is still

10   relevant when assessing the persuasiveness of the source's opinion.  *Id*. (citing 20 C.F.R.

11   404.1520c(c)(3)).  Therefore, the ALJ can consider the length and purpose of the treatment

12   relationship, the frequency of examinations, the kinds and extent of examinations the medical

13   source has performed or ordered from specialists, and whether the medical source actually

14   examined the claimant or merely reviewed the claimant's records.  *Id*. (citing § 404.1520(c)(3)(i)-

15   (v)).

16         However, the ALJ is no longer required to discuss these relationship factors and may

17   instead discuss them when "two or more medical opinions . . about the same issue are . . . equally

18   well-supported . . . and consistent with the record . . . but are not exactly the same." *Id*. §

19   404.1520c(b)(3).

20         Dr. Peters completed a Physical Residual Function Capacity Medical Source Statement

21   form.  The ALJ summarized Dr. Peters' opinion as follows:

22              In May 2019, the claimant's primary care physician from
              Reedley Wellness Center, Jacob K. Peters, MD, completed a
23              Physical Residual Function Capacity Medical Source Statement
              form. The doctor stated he had treated the claimant for 20 years,
24              generally seeing him twice a year. The claimant was diagnosed with
              obesity and hypertension. His symptoms included pain, fatigue,
25              edema and anxiety. The doctor said the claimant was unable to lift
              and carry even less than 5 pounds. He was unable to walk one city
26              block without rest or severe pain, walk one block or more on rough
              or uneven ground, or climb steps without the use of a handrail at a
27              reasonable rate. The claimant had problems balancing, stooping,
              crouching and bending. He needed to lie down or recline for about
28              15 minutes due to fatigue, before needing to sit up, stand up or walk

1   around, for a total of 4 hours in an 8-hour workday. The claimant was
2   able to stand and walk for less than one hour, and sit for about 4 hours
    in an 8-hour workday. He must be permitted unscheduled breaks
3   every hour. The claimant required the use of an assistive device to
    stand and walk. He was able to grasp, turn and twist objects with his
4   bilateral hands for 35% of an 8-hour workday, engage in fine
    manipulation 50% of the workday with her bilateral fingers, and
5   reach with her bilateral arms 45% of an 8-hour workday. The
    claimant was unable to push or pull arm or leg controls from a sitting
6   position, or climb ramps, ropes, stairs, or scaffolds. The claimant
    suffered from depression and anxiety, which affected his physical
7   abilities. He constantly experienced pain and stress severe enough to
    interfere with his ability to perform simple work tasks. The claimant
8   should avoid working in temperature extremes or humidity. He
    would likely be off tasks more than 30% of a workday, and would
9   miss 5 days or more of work each month.  (AR 19) (citing AR 418-
    22).

10  The ALJ did not find Dr. Peters' opinion persuasive. He found that Dr. Peters overstated

11  Plaintiff's limitations, and only saw him twice a year.  The ALJ further addressed the

12  supportability factors stating that "[t]he clinical findings from the visits are essentially normal,

13  and do not reflect any observed abnormalities which would support the extreme extent of

14  limitations assessed by . . . [Dr.Peters]."  (AR 19, 419-422) The ALJ pointed to Dr. Peters' own

15  medical records which consistently found good oxygen saturation levels and no indications of

16  manipulative limitations. (AR 424, 429-30,438) Some of Dr. Peters' medical records relied on by

17  the ALJ included records that were produced after the issuance of his Physical Residual function

18  Capacity Medical Source Statement form.  (*See* AR 423). The ALJ further found that Dr. Peters'

19  opinion was "grossly inconsistent" with the other objective medical records in the file.

20      The ALJ provided a logical and rational reason for rejecting the limitations provided by

21  Dr. Peters. The ALJ properly evaluated Dr. Peters opinion with the supportability and consistency

22  factors outlined in the revised regulations.  20 C.F.R. § 404.1520c(a).  Furthermore, the ALJ's

23  supportability and consistency analysis is supported by substantial evidence in the record as a

24  whole. The Court therefore concludes that the ALJ's rejection of Dr. Peters' medical opinion was

25  supported by substantial evidence.

26      **B.  Whether the ALJ Failed to State Clear and Convincing Reasons for Rejecting**

27          **Plaintiff's Symptom Testimony**

28  Plaintiff argues that the ALJ did not provide clear and convincing reasons to reject his

8

1   testimony regarding his pain and symptoms. (Doc. 15 pp. 9-10).  Plaintiff argues that "[t]here is

2   some medical basis for [his] understanding that he could or should use a cane and that he could or

3   should use oxygen supplementation, at least at night to treat his obstructive sleep apnea." *Id.* p.

4   10.

5           During the hearing, Plaintiff testified that due to his edema, he cannot put shoes on and

6   periodically needs to elevate his legs.  (AR 20, 39).  Plaintiff also testified that due to his weight

7   issues, he has trouble breathing.  (AR 43).  Plaintiff did not bring an oxygen tank to the hearing

8   but testified that he had used oxygen in the past and had used a C-PAP device when he slept.

9   (AR 43-44).

10          The ALJ must make two findings prior to deeming a claimant's pain or symptom

11  testimony not credible.  42 U.S.C. § 423(d)(5)(A).  First, the ALJ must determine whether the

12  claimant presented objective medical evidence of an impairment that could reasonably be

13  expected to produce the pain or other symptoms alleged.  *Treichler v. Commissioner of Soc. Sec.*,

14  775 F.3d 1090, 1102 (9th Cir. 2014).  "Second, if the claimant has produced that evidence, and

15  the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear

16  and convincing reasons for' rejecting the claimant's testimony." *Id.* (*citing Smolen v. Chater*,

17  F.3d 1273, 1281 (9th Cir. 1996)).

18          Here, the ALJ acknowledged and engaged in this two-part analysis.  (AR 21).  The ALJ

19  found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but

20  separately noted: "the claimant's statements concerning the intensity, persistence and limiting

21  effects of these symptoms are not entirely consistent with the medical evidence and other

22  evidence in the record for the reasons explained in this decision."[3]

23          The ALJ may consider numerous factors in weighing a claimant's credibility, including

24  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

25  prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

26  ───────────────────

27          [3] This statement is nearly identical to a statement the Ninth Circuit found to be
    "boilerplate" routinely included in ALJ decisions. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir.

28  2020).  However, as discussed further below, unlike the ALJ in *Lambert*, the ALJ here identified
    the parts of claimant's testimony he discounted and articulated his reasons for doing so. *Id.*

1  appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

2  follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d

3  at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the

4  factors identified in Social Security Ruling (SSR) 16-3P.[4] *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d

5  341, 346 (9th Cir. 1991)). *Accord Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th

6  Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of
> pain or other symptoms; (3) Factors that precipitate and aggravate the
> symptoms; (4) The type, dosage, effectiveness, and side effects of any
> medication an individual takes or has taken to alleviate pain or other
> symptoms; (5) Treatment, other than medication, an individual receives
> or has received for relief of pain or other symptoms; (6) Any measures
> other than treatment an individual uses or has used to relieve pain or other
> symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes
> every hour, or sleeping on a board); and (7) Any other factors concerning
> an individual's functional limitations and restrictions due to pain or other
> symptoms.

13  SSR 16-3P at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by

14  substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039

15  (citations and internal quotation marks omitted).

16      The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

17  demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

18  2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

19  finding that a claimant's testimony is not credible must be sufficiently specific to allow a

20  reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

21  grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v.

22  Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

23      "The fact that a claimant's testimony is not fully corroborated by the objective medical

24  findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*,

25  260 F.3d 1044, 1049 (9th Cir. 2001). *See also* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject

---

27      [4] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at
28  2017 WL 5180304). *See Amy E.S. v. Commissioner*, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10,
2022).

1    your statements about the intensity and persistence of your pain or other symptoms or about the

2    effect your symptoms have on your ability solely because the objective medical evidence does not

3    substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully

4    substantiated by the objective medical record, the ALJ must provide additional reasons for

5    discounting the testimony.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  "The ALJ

6    must specify what testimony is not credible and identify the evidence that undermines the

7    claimant's complaints – '[g]eneral findings are insufficient.'"  *Id.* (quoting *Reddick v. Chater*, 157

8    F.3d 715, 722 (9th Cir. 1988)).

9         However, the medical evidence "is still a relevant factor in determining the severity of the

10   claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

11   2001).  The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical

12   evidence from testimony that is "contradicted" by the medical records, and concluded that

13   contradictions with the medical records, by themselves, are enough to meet the clear and

14   convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (quoting

15   *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008)).

16        In essence, "the 'clear and convincing' standard requires an ALJ to show his work."

17   *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).  The ALJ is not "required to believe every

18   allegation of disabling pain, or else disability benefits would be able available for the asking, a

19   result plainly contrary to" the Social Security Act.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th

20   Cir. 2012).

21        The ALJ found that Plaintiff's statements concerning the intensity, persistence and

22   limiting effects of the symptoms were not "entirely consistent" with the medical evidence and

23   other evidence in the record for reasons explained in the decision. (AR 21).  The ALJ's

24   assessment regarding Plaintiff's testimony was based in part on medical evidence and other

25   evidence in the record.

26        First, objective medical evidence cast doubt on Plaintiff's pain and symptom testimony.

27   The ALJ relied in part on records from Dr. Peters and Reedley Wellness center that showed

28   Plaintiff's oxygen levels routinely were at acceptable levels, contrary to Plaintiff's testimony that

he required supplemented oxygen.  (AR 21); (*see* AR 423-24, 426-27, 430, 433, 436, 438, 443, 445, 447).  Those medical records cover a time period from December 2016 (AR 446) to August 2019 (AR 423) and reflect no usage or need for supplemental oxygen.  While Plaintiff points to a medical record dated May 10, 2017, diagnosing Plaintiff's need for supplemented oxygen on that date (Doc. 15 p. 10, citing AR 290), there otherwise is no medical evidence that Plaintiff ever was, in fact, prescribed oxygen.  This single document does not undermine the substantial basis on which the ALJ relied upon in his assessment of Plaintiff's testimony.

Second, the ALJ pointed to other, nonmedical evidence that cast in doubt Plaintiff's testimony regarding his pain and symptoms.  Specifically, in contrast to Plaintiff's testimony that he needed and used a cane for ambulation, the ALJ acknowledged Dr. Damania's report, dated August 17, 2017, documenting that Plaintiff did not use a cane during his examination nor need a cane to ambulate. (AR 408).  Taken together, these findings by the ALJ constitute "specific, clear and convincing reasons" supporting his basis for discounting Plaintiff's pain and symptom testimony. *See Treichler*, 775 F.3d at 1102.

Even if the ALJ's treatment of Plaintiff's pain and symptom testimony amounted to error, such error was harmless because the ALJ accounted for Plaintiff's conditions in reducing his RFC.  *See, e.g.*, *Darrin F.W. v. Kijakazi*, No. CV 20-108-M-DWM, 2021 WL 4438473, at *10 (D. Mont. Sept. 28, 2021) ("the ALJ's error in not expressly crediting [claimant's] testimony is harmless because such accommodations were nevertheless accounted for in the RFC").  Specifically, while Dr. Damania and State agency medical consultants Drs. Titanji and Gleason each assessed that Plaintiff could perform a range of light work, the ALJ reduced Plaintiff's RFC to "a more restrictive level of functioning" – sedentary work – as "a precautionary measure due to his excessive weight and lower extremity edema." (AR 21)

## C.  Whether the ALJ Failed to State a Complete Hypothetical Question to the Vocational Expert

Plaintiff argues that the ALJ committed error by directing a hypothetical question to the vocational expert (VE) that did not require her to assume that the individual under consideration weighed over 500 pounds and would need an accommodation by an employer due to his body

habitus.  (Doc. 15 pp. 11-12).  Plaintiff contends that by failing to provide a complete hypothetical, the ALJ rendered the VE's expert testimony insubstantial.  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

At the commencement of his examination of the VE, the ALJ confirmed that she had reviewed Plaintiff's file and had no questions about his history.  (AR 22, 50).  The ALJ then asked the VE to consider an individual with the following limitations:  lift/carry 20 pounds occasionally, ten pounds frequently; sit for six hours of an eight-hour workday; stand/walk for four hours of an eight-hour workday; avoid all climbing of ladders, ropes, scaffolding; and no more than occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no more than frequent balancing.  *Id.*  The ALJ also directed the VE to consider jobs at the "sedentary" level.  (AR 51).

The ALJ's hypothetical question to the VE was appropriate.  Plaintiff's reliance on *Embrey* (*supra*) to suggest the question was improper is misplaced.  In that case, an ALJ's hypothetical question to the VE required her to assume, among other things, that the claimant could alternate between sitting and standing for a full eight-hour workday.  849 F.2d at 423.  But that assumption had no support in the record and was contradicted by the claimant's testimony and that of a doctor.  *Id.*  The hypothetical also did not address the claimant's other physical ailments, such as pains, dizziness and blurred vision.  Moreover, the ALJ's rejection of the claimant's pain/symptom testimony in this regard was found by the Ninth Circuit to be unsupported.  *Id.*

In contrast here, Plaintiff does not argue that the ALJ's hypothetical question misstated limitations or included limitations without support in the record. Rather, Plaintiff contends that the ALJ's reliance on the VE's response was erroneous because the hypothetical question omitted Plaintiff's weight and body habitus, which, according to Plaintiff, would require a workplace accommodation.  (Doc. 15 p. 11-12).  Plaintiff cites no authority that an ALJ must include a claimant's weight and body habitus in a hypothetical question posed to a VE, or more generally, conditions possibly requiring workplace accommodations.  Indeed, the authority in the Ninth Circuit is to the contrary.  *E.g.*, *Glaspy v. Berryhill*, 771 Fed. Appx. 747, 747 (9th Cir. 2019)

13

("The regulations do not require that the ALJ incorporate Americans with Disabilities Act (ADA) accommodations into the assessment. Nor do the regulations require that the ALJ consider reasonable accommodation to determine whether work exists in the national economy at step five of the sequential evaluation.") (internal citation omitted); *Hoffman v. Saul*, No. 2:17-cv-02837-WGC, 2020 WL 774358, at *7 (D. Nev. Feb. 18, 2020) (same; "the agency is not required to take the possibility of reasonable accommodation into account in adjudicating its disability claims."); *Henry v. Comm'r of Soc. Sec.*, No. 1:19-cv-01690-SAB, 2021 WL 600858, at *5 (E.D. Cal. Feb. 16, 2021) (same; ALJ did not error in assessing RFC without accounting for accommodations relating to claimant's need to elevate legs and sit). *Accord Melody A. v. Kijakazi*, No. 1:21-cv-00186-CWD, 2022 WL 458826, at *7 (D. Idaho Sept. 29, 2022) (ALJ did not error in omitting claimant's condition of severe irritable bowel syndrome from hypothetical question posed to VE).[5]

In short, the ALJ's hypothetical question to the VE accurately stated Plaintiff's limitations and was not required to include workplace accommodations attributed to Plaintiff's weight and body habitus. Even if the ALJ's reliance on the VE's response amounted to error, such error was harmless because the ALJ accounted for Plaintiff's conditions in reducing his RFC (from light work to sedentary). *See, e.g.*, *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (rejecting as harmless error claim that hypothetical question failed to include all of Plaintiff's limitations given other evidence considered by ALJ).

**D. Whether Remand is Appropriate Following the Commissioner's Subsequent Approval of Plaintiff's Second Disability Application**

Following the Appeals Council's denial of Plaintiff's claim on June 9, 2020 (AR 1-6), Plaintiff filed a new claim for benefits on June 29, 2020 (the "June 29 claim"). According to a letter from SSA to Plaintiff dated May 24, 2021, and attached to Plaintiff's motion, the

---

[5] The Court notes that Plaintiff, who was represented by counsel at the review hearing, failed to argue to the ALJ that he committed error in considering the VE's testimony without incorporating reasonable workplace accommodations. (AR 28). In the Ninth Circuit, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

1  Commissioner granted the June 29 claim, finding that Plaintiff was eligible for benefits "as of

2  June 2020."  (Doc. 15 p. 17).  Plaintiff argues that remand of this matter is appropriate for further

3  proceedings based on new and material evidence not available at the time of the hearing on

4  Plaintiff's first claim at issue here, which raises the possibility of a different result.

5        "For this court to order a remand, Plaintiff must show 'that there is new evidence which is

6  material and that there is good cause for the failure to incorporate such evidence into the record in

7  a prior proceeding....'"  *Booz v. Sec. of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.

8  1984) (quoting 42 U.S.C. § 405(g)).  Evidence is "material" when it "bear[s] directly and

9  substantially on the matter in the dispute," and if there is a "reasonabl[e] possibility that the new

10  evidence would have changed the outcome of the . . . determination." *Bruton v. Massanari*, 268

11  F.3d 824, 827 (9th Cir. 2001) (quoting *Booz*, 734 F.2d at 1380).

12        In *Bruton*, the ALJ denied plaintiff's initial application for benefits on April 9, 1996,

13  finding him not disabled as of that date.  268 F.3d at 826.  Plaintiff's subsequent application for

14  benefits was granted as of April 10, 1996.  *Id.* at 827.  The district court denied Plaintiff's motion

15  to remand the denial of his first claim for benefits in light of the later favorable outcome, and the

16  Ninth Circuit affirmed, finding that the "the second ALJ's subsequent decision to award benefits

17  as of April 10, 1996, is not inconsistent with the first ALJ's denial of [plaintiff's] initial

18  application." *Id.*

19        Here, as in *Bruton*, the second ALJ's subsequent decision to award benefits as of June

20  2020 is not inconsistent with the first ALJ's denial of benefits on November 1, 2019, finding the

21  claimant as of that date not disabled.  Specifically, there is a seven-month gap between the date

22  the ALJ denied Plaintiff's first claim and the date on which a different ALJ found Plaintiff

23  disabled in connection with a later claim.  Indeed, the ALJ's decision awarding benefits to

24  Plaintiff on his second claim reflects that the award was based on findings of two new severe

25  MDIs that were not in existence at the time of Plaintiff's initial claim. (Doc. 16 p. 27; Doc. 16-1

26  pp. 7-8).[6]  Thus, this is not a case such as *Luna v. Astrue*, where the Court affirmed remand where

27  _____

28        [6] The Court takes judicial notice of the ALJ's decision granting Plaintiff's subsequent
    benefits claim (the claim submitted on June 29, 2020), which Defendant filed in opposition to
    Plaintiff's motion for summary judgment and where Plaintiff has not objected to its introduction

1    "there was only one day between the denial of [plaintiff's] first application and the disability

2    onset date specified in the award for her successful second application."  623 F.3d 1032, 1035

3    (9th Cir. 2010).

4        Because it is clear the ALJ's award of benefits on Plaintiff's second claim involved a

5    different time period and different MDIs than those at issue in the instant action, the new

6    information is not "material" because it does not present a reasonable possibility that its

7    consideration by the first ALJ would have changed the outcome.  Accordingly, remand on this

8    ground is not warranted.

9                                    **I.    CONCLUSION**

10       Accordingly, for the foregoing reasons, it is **ORDERED**:

11   1.   Plaintiff's motion for summary judgement (Doc. 15) is DENIED and the decision of

12        the Commissioner of Social Security is AFFIRMED.

13   2.   The Clerk is directed to enter judgment in favor of the Commissioner of Social

14        Security, terminate any pending motions/deadlines, and close this case.

15   IT IS SO ORDERED.

16   Dated:   __**August 24, 2023**__                    _____

17                                                    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27   _____

28   and consideration by the Court.  *See Sheikh v. Medical Bd. of Cal.*, No. S-10-0213 FCD GGH PS,
     2010 WL 2793551, at *1 (E.D. Cal. July 14, 2020) (a court may take judicial notice of
     administrative court records).

                                           16